UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES DON MEZA and JEFF STEPHENS,<br><br>Plaintiffs,<br><br>v.<br><br>DOUGLAS COUNTY FIRE DISTRICT NO. 2 and DAVID L. BAKER, in his individual capacity,<br><br>Defendants. | NO: 2:15-CV-115-RMP<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT RE PLAINTIFF MEZA |

BEFORE THE COURT is Defendants' Motion for Summary Judgment re Claims of Plaintiff Meza, **ECF No. 28**. The Court has reviewed the motion, the response memorandum (ECF No. 36), the reply memorandum (ECF No. 43), has heard argument from counsel, and is fully informed.

**FACTS**

Plaintiffs James Don Meza ("Meza") and Jeff Stephens ("Stephens") (collectively, "Plaintiffs") are both former employees of Douglas County Fire

District No. 2 ("District"). ECF No. 23 at 4. The District employed Meza as a volunteer firefighter, and Stephens as a shift captain. *Id.* at 2.

The District terminated Stephens on July 31, 2013. ECF No. 31 at 12. Stephens alleges that he was terminated due to the "exercise of his rights to represent members of the union and engage in concerted activities for the purpose of collective bargaining or other mutual aid or protections and/or his exercise of rights of free speech and freedom of association under the First Amendment." *Id.* However, Defendants contend that Stephens was terminated for several acts of misconduct. *Id.* After three years of intermittent violations, each of which occurred after notice was provided that the behavior would not be tolerated, the District terminated Stephens. *Id.* at 12.

Stephens subsequently took his case to arbitration in March 2014. ECF No. 29 at 5. At Stephens' March 2014 arbitration hearing, Meza testified on behalf of Stephens. *Id.* Meza alleges that he was terminated both in retaliation for giving favorable testimony for Stephens, and due to his connection to Stephens' union. *Id.* at 6. Defendants assert that the arbitrator's decision did not even mention Meza's testimony, let alone that Meza's testimony played a role in or influenced the outcome of Stephens' case. ECF No. 28 at 2-3.

Instead, Defendants allege that Meza was suspended and ultimately terminated for several acts of misconduct. ECF No. 29 at 13-14. These include the use of inappropriate language at training, wearing a District sweatshirt at a casino

while drinking alcohol, and conducting an unapproved investigation of a fellow volunteer firefighter. *Id.* at 13. Meza disputes these reasons, and alleges that he was not disciplined for anything in over five years until he testified on behalf of Stephens. ECF No. 38 at 9. Additionally, Meza contends that other firefighters were involved in similar acts of misconduct, but were not disciplined. *Id.* at 7.

As a result of Meza's conduct violation, Baker suspended Meza in May of 2014, and advised him to turn in his gear. ECF No. 29 at 12. Following his suspension, Defendants allege that Meza told another firefighter that "it was going to get ugly. . . ."[1] *Id.* That statement prompted Baker to give Meza notice of a pre-termination hearing. *Id.* Meza was officially terminated in June 2014. *Id.* at 13-14.

**DISCUSSION**

Defendants move for summary judgment on Meza's 42 U.S.C. § 1983 cause of action as well as on Meza's Washington State tort claim for wrongful discharge in violation of public policy. *See* ECF No. 28.

**I. Summary Judgment Standard**

Summary judgment is appropriate when the moving party establishes that there are no genuine issues of material fact and that the movant is entitled to

---

[1] Meza disputes the exact phrasing of his statement. However, as any dispute concerning the statement does not demonstrate a genuine issue of material fact, the Court will not address this factual dispute further.

judgment as a matter of law. Fed. R. Civ. P. 56(a). If the moving party demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-moving party to set out specific facts showing that a genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted).

The evidence presented by both the moving and non-moving parties must be admissible. Fed. R. Civ. P. 56(c)(2). Evidence that may be relied upon at the summary judgment stage includes "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, [and] interrogatory answers." Fed. R. Civ. P. 56(c)(1)(A). The Court will not presume missing facts, and non-specific facts in affidavits are not sufficient to support or undermine a claim. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

In evaluating a motion for summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party. *Dzung Chu v. Oracle*

*Corp. (In re Oracle Corp. Secs. Litig.)*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

**II. 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Defendants argue that (1) Meza's First Amendment Freedom of Speech claim fails as his speech was not a matter of public concern; (2) Meza's First Amendment Freedom of Association claim is without merit; (3) the District is not liable under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); and (4) Defendant Baker is entitled to qualified immunity. *See* ECF No. 28.

**A. Section 1983 Free Speech Retaliation Claim**

To proceed with a First Amendment claim for unlawful retaliation against an employee for protected speech, Meza must demonstrate a genuine issue of material fact that: (1) the plaintiff spoke on a matter of public concern; (2) the plaintiff spoke as a private citizen; and (3) the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action. *Anthoine v. N. Cent. Ctys. Consortium*, 605 F.3d 740, 748 (9th Cir. 2010). The defendant may then rebut the plaintiff's showing by demonstrating that: (1) the state had an adequate justification for treating the employee differently from other members of the

general public; and (2) the state would have taken the adverse employment action even absent the protected speech. *Id.*

***i. Public Concern***

Speech is a matter of public concern when the content involves any matter related to political, social, or other community interests. *Anthoine*, 605 F.3d at 748. Further, speech is a matter of public concern if it supplies information that enables members of society to make informed decisions about newsworthy government operations. *Desrochers v. City of San Bernardino*, 572 F.3d 703, 710 (9th Cir. 2009). Alternatively, speech is not a matter of public concern if it involves personnel disputes and grievances that have no relevance to the public's evaluation of the government or agency. *Id.*

In *McKinley v. City of Eloy*, 705 F.3d 1110 (9th Cir. 1983), the Ninth Circuit held that the plaintiff-police officer's speech regarding compensation and relations between police union and city officials was a matter of public concern. *Id.* at 1114. The court reasoned that both union compensation negotiations and union relations with the city are related to the police department's "efficient performance of its duties," thereby invoking a public concern. *Id.*

Here, Meza asserts that his testimony on behalf of Stephens was union related, and therefore protected under the First Amendment. ECF No. 23 at 4.

However, Meza does not specify how his speech is union related.[2] *Id.* Unlike *McKinley,* Meza does not claim his speech was for the purpose of union negotiations, management-labor relations, or governmental efficiency. Meza vaguely suggests that his speech was for the purpose of collective bargaining. *Id.* However, as Meza cannot recall the specifics of his arbitration testimony, Meza has not demonstrated a genuine issue of material fact supporting his claim that his speech involved a matter of public concern. *See* ECF No. 44 at 2-3. Without any specific information as to Meza's arbitration testimony, neither this Court nor a jury could conclude, based purely on speculation and generalizations, that Meza testified about a matter of public concern.

Furthermore, testimony on behalf of Stephens at an employment arbitration hearing constitutes a private matter that dealt with a personnel grievance. *McKinley*, 705 F.2d at 1114 (speech by public employees regarding personnel disputes and grievances is not a matter of public concern). Testimony regarding Stephens' employment would not spark any political, social, or community interest. *See Connick v. Myers*, 461 U.S. 138, 149 (1983) ("To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public

---

[2] Plaintiff conceded during oral argument that there is no evidence in the record concerning the exact substance of Meza's testimony.

official—would plant the seed of a constitutional case.”). Based on the evidence before the Court, Meza’s testimony at the employment arbitration hearing “did nothing to inform the public about any aspect of” the District’s functioning or operation. *See City of San Diego v. Roe*, 543 U.S. 77, 85 (2004). As such, Meza’s arbitration testimony did not touch on a matter of public concern and is not protected by the First Amendment.

Meza asserts that being compelled to appear, under subpoena, to testify is sufficient to demonstrate a matter of public concern. *See* ECF No. 36 at 10. However, Meza’s reliance on *Lane v. Franks*, __U.S.__, 134 S. Ct. 2369 (2014), is misplaced. In *Lane*, the plaintiff-employee was terminated for testifying at a former employee’s criminal trial, pursuant to a subpoena. *Id.* at 2375. The Court held that termination in retaliation for a subpoenaed testimony was a violation of the First Amendment. *Id.* at 2383. However, the plaintiff’s speech was a matter of public concern because it involved political corruption, and “corruption in a public program and misuse of state funds—obviously involves a matter of significant public concern.” *Id.* at 2380.

*Dahlia v. Rodriguez*, 735 F.3d 1060 (9th Cir. 2013), is also distinguishable. In *Dahlia*, the plaintiff-police officer was threatened and intimidated by co-workers for reporting to the police department’s Internal Affairs unit. *Id.* at 1064–65. As the court noted, “Dahlia’s speech—reporting police abuse and the attempts

to suppress its disclosure—is quintessentially a matter of public concern." *Id.* at 1067.

Meza, on the other hand, cannot recall the specific content of his subpoenaed arbitration testimony, let alone demonstrate that the testimony concerned an issue of comparable public interest to governmental corruption or abusive behavior by law enforcement. As such, the Court finds that Meza, although subpoenaed to appear, was not testifying on a matter of public concern merely due to the fact that the testimony was compelled.

Meza further alleges that he was terminated for his speech regarding a fellow firefighter's unsafe driving habits. ECF No. 36 at 10. However, this contention was not pleaded in the complaint. Rather, Meza raised this issue in response to Defendants' motion for summary judgment, which alleged that Meza's behavior, including an unauthorized investigation of a fellow firefighter, was cause for Meza's termination. *Id.* Furthermore, Defendants do not allege that Meza was fired for speaking out against a fellow firefighter. Instead, Defendants allege that Meza broke the chain of command by initiating an investigation, and that such unauthorized behavior amounts to punishable misconduct. ECF No. 29 at 6. While speech regarding firefighter safety could constitute a matter of public concern, Meza did not assert suppression of or retaliation for such speech in his complaint.

/ / /

/ / /

***ii. Conclusion***

The Court finds that Meza has failed to demonstrate a genuine issue of material fact concerning his First Amendment violation of Freedom of Speech claim. Since Meza is unable to inform the Court as to the specific content of his arbitration testimony, the Court cannot conclude that Meza's testimony involved a matter of public concern. As Meza cannot satisfy the first element for a First Amendment retaliation claim, the Court declines to address the remaining elements. Meza's 28 U.S.C. § 1983 cause of action based on Freedom of Speech is therefore **dismissed with prejudice**.

**B. Section 1983 Freedom of Association Claim**

Meza alleges that he was terminated for exercising his freedom to associate with a union under the First Amendment. ECF No. 23 at 3-4. An employer may not retaliate against an employee for union membership, but may tell an employee "what he reasonably believes will be the likely economic consequences of unionization that are outside his control." *N. L. R. B. v. Gissel Packing Co.*, 395 U.S. 575, 619 (1969) (quoting *N.L.R.B. v. River Togs, Inc.*, 382 F.2d 198, 202 (2d Cir. 1967)); *see also Saye v. St. Vrain Valley Sch. Dist. RE-1J*, 785 F.2d 862, 866-67 (10th Cir. 1986) ("The right to participate in union activities may be abridged by a state employer only when the limitation is narrowly drawn to further a substantial state interest."). Moreover, Meza bears the burden of establishing his

union membership was Defendants' motivating factor for terminating him. *Saye*, 785 F.2d at 867.

During oral argument, Meza asserted that he had a right to associate with Stephens. The First Amendment protects the freedom to associate in intimate relationships. *Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987). Those relationships include marriage, child bearing, child rearing and educations, and cohabitation with relatives. *Id.*

Here, Meza is not a union employee, and therefore was not deprived of his freedom to associate with a union. Additionally, Meza's relationship with Stephens is not an intimate relationship. At most, the facts show that Meza and Stephens were co-workers. Likewise, a co-worker relationship is not intimate similar to that of marriage and child bearing. *See IDK, Inc. v. Clark Cty.*, 836 F.2d 1185, 1193 (9th Cir. 1988) ("The relationships protected by the fourteenth amendment 'are those that attend the creation and sustenance of a family' and similar 'highly personal relationships.'") (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 619 (1984)). Consequently, Meza has failed to demonstrate a genuine issue of material fact concerning his Freedom of Association claim. Meza's 28 U.S.C. § 1983 cause of action based on Freedom of Association is therefore **dismissed with prejudice**.

/ / /

/ / /

/ / /

**C. Section 1983 Defenses**

Although Meza cannot meet his burden by establishing a viable § 1983 First Amendment claim, the Court will alternatively rule on Defendants' affirmative defenses.

***i. Municipal Immunity***

Defendants contend that § 1983 does not apply to the District under a municipal immunity theory. "A municipality may not be sued under § 1983 solely because an injury was inflicted by its employees or agents." *Long v. Cty. of L.A.*, 442 F.3d 1178. 1185 (9th Cir. 2006) (citing *Monell*, 436 U.S. at 694). Rather, a municipality is only liable under § 1983 if the plaintiff can prove (1) "a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a "longstanding practice or custom", (2) ""the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official governmental policy." (3) "that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

As discussed above, the Court has found that neither Meza's Freedom of Speech nor Freedom of Association rights were violated by his termination. The Court therefore concludes that the District is shielded by municipal liability.

***ii. Qualified Immunity***

Defendants assert that Baker's termination of Meza is protected by qualified immunity. "Qualified immunity 'protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sjurset v. Button*, 810 F.3d 609, 614 (9th Cir. 2015) (quoting *Mueller v. Auker (Mueller II)*, 700 F.3d 1180, 1185 (9th Cir. 2012)). To overcome a qualified immunity defense, a plaintiff must demonstrate that (1) "[t]aken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right," and (2) "the law clearly established that the officer's conduct was unlawful in the circumstances of the case." *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Moreover, "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Reichle v. Howards* __U.S.__, 132 S. Ct. 2088, 2093 (2012) (internal citation omitted).

As discussed above, the Court has found that neither Meza's Freedom of Speech nor Freedom of Association rights were violated by his termination. The Court therefore concludes that Baker is entitled to qualified immunity.

**III. Wrongful Discharge in Violation of Public Policy**

Meza contends that he was wrongfully terminated in violation of public policy. Under 28 U.S.C. § 1367(c), a district court may decline to exercise

supplemental jurisdiction over a state law claim if "(1) the claim raises a novel or complex issue of State law . . . [or] (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

Here, the Court has dismissed Meza's § 1983 cause of action over which the Court had original jurisdiction. Further, the parties have noted that Washington State law is unclear over whether Baker can be held liable under Washington State law for wrongful discharge in violation of public policy. *See* ECF No. 28 at 18–19; ECF No. 36 at 18–19. As Meza's remaining cause of action raises a novel issue of state law and Meza has no viable federal claims, the Court declines to exercise supplemental jurisdiction over Meza's state law cause of action. Meza's wrongful discharge in violation of public policy cause of action is therefore **dismissed without prejudice**.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment re Claims of Plaintiff Meza, **ECF No. 28**, is **GRANTED**. Plaintiff Meza's 28 U.S.C. § 1983 claims against Defendants are **dismissed with prejudice**. As the Court declines to exercise supplemental jurisdiction over Meza's

Washington State wrongful discharge in violation of public policy claim, that cause of action is **dismissed without prejudice**.

The District Court Clerk is directed to enter this Order, enter Judgment accordingly, provide copies of this Order and the Judgment to counsel, and **terminate Plaintiff Meza as a party in this case**.

**DATED** this 8th day of July 2016.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
United States District Judge