UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEFF STEPHENS,<br><br>    Plaintiff,<br><br>  v.<br><br>DOUGLAS COUNTY FIRE DISTRICT NO. 2 and DAVID L. BAKER, in his individual capacity,<br><br>    Defendants. | NO: 2:15-CV-115-RMP<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendants' Motion for Summary Judgment, **ECF No. 30.** The Court has reviewed the motion, the response memorandum (ECF No. 42), the reply memorandum (ECF No. 47), has heard argument from counsel, and is fully informed.

## FACTS

Plaintiff Jeff Stephens ("Stephens") is a former employee of Douglas County Fire District No. 2 ("District"). ECF No. 23 at 2. The District employed Mr. Stephens as a shift captain. *Id*. Mr. Stephens was terminated for alleged misconduct on July 31, 2013. ECF No. 31-1 at 4. Although an arbitrator ruled that the District did not have just cause to terminate Mr. Stephens, the arbitrator found

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1

that an appropriate sanction for Mr. Stephens' misconduct was suspension without pay for one month. ECF No. 31-1 at 4-5. After Mr. Stephens' reinstatement, numerous allegations were lodged about Mr. Stephens' repeated misconduct. *See e.g.,* CF No. 31-1 at 3-5, 7-11, 20. After a Loudermill hearing, Chief Baker terminated Mr. Stephens again on July 20, 2015. ECF No. 31-1 at 6.

Mr. Stephens filed a lawsuit in this court claiming state law claims as well as a claim under 42 U.S.C. § 1983 for violation of his constitutional rights. Mr. Stephens alleges in his amended complaint that both the 2013 termination and the 2015 termination were in retaliation for the "exercise of his rights to represent members of the union and engage in concerted activities for the purpose of collective bargaining or other mutual aid or protections and/or his exercise of rights of free speech and freedom of association under the First Amendment." ECF No. 23 at 4-5. Defendants contend that Mr. Stephens was terminated on both occasions for numerous acts of misconduct that continued after Mr. Stephens was counseled about his actions. *See e.g.,* ECF No. 31-1 at 3-5, 7-11, 20.

## DISCUSSION

Defendants move for summary judgment of all claims, including Mr. Stephens' § 1983 cause of action, arguing that Mr. Stephens' First Amendment freedom of speech claim fails because his speech was not a matter of public concern and he did not speak as a private citizen; that Mr. Stephens cannot demonstrate that the District retaliated against him based on anti-union animus;

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 2

1  that Mr. Stephens' First Amendment Freedom of Association claim fails because
2  Mr. Stephens' association with the union was not infringed; that the District is not
3  liable under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978);
4  that Defendant Baker is entitled to qualified immunity; and that Mr. Stephens'
5  claim for punitive damages under § 1983 must be dismissed.  ECF No. 30.

6      In response to Defendants' motion for summary judgment, Mr. Stephens
7  argues that he has raised genuine issues of material fact as to whether his union
8  activities were a substantial factor in his termination but concedes that punitive
9  damages are not available against a municipality.  ECF No. 42 at 19.  Therefore,
10 the Court **grants** Defendants' motion to dismiss claims for punitive damages
11 against Douglas County and will discuss the remainder of Mr. Stephens' claims
12 beginning with his federal claim.

**Summary Judgment Standard**

14     Summary judgment is appropriate when the moving party establishes that
15 there are no genuine issues of material fact and that the movant is entitled to
16 judgment as a matter of law.  Fed. R. Civ. P. 56(a).  If the moving party
17 demonstrates the absence of a genuine issue of material fact, the burden shifts to
18 the non-moving party to set out specific facts showing that a genuine issue of
19 material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).  A
20 genuine issue of material fact requires "sufficient evidence supporting the claimed
21 factual dispute . . . to require a jury or judge to resolve the parties' differing

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 3

versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted).

The evidence presented by both the moving and non-moving parties must be admissible. Fed. R. Civ. P. 56(c)(2). Evidence that may be relied upon at the summary judgment stage includes "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, [and] interrogatory answers." Fed. R. Civ. P. 56(c)(1)(A). The Court will not presume missing facts, and non-specific facts in affidavits are not sufficient to support or undermine a claim. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

In evaluating a motion for summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party. *Dzung Chu v. Oracle Corp. (In re Oracle Corp. Secs. Litig.)*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The production of "a scintilla of evidence in support of the non-moving party's position" is not sufficient to create a genuine issue of material fact. *Trinton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor may hyperbole, supposition, or conclusory accusations substitute for actual evidence. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 954 (9th Cir. 1978). The Court need not,

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4

and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

I.    **42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).

**A.  Free Speech Retaliation Claim**

The First Amendment protections relating to speech include not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 574 (1986) (noting that retaliatory acts are a "potent means of inhibiting speech"). In order to state a claim against a government employer for violation of the First Amendment, the Court employs a five-step inquiry to determine whether a state employer impermissibly retaliated against an employee for protected speech:

> "(1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 5

differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech."

*Anthoine v. N. Cent. Ctys. Consortium,* 605 F.3d 740, 748 (9th Cir. 2010) (quoting *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009)).

### i. *Public Concern*

Mr. Stephens alleges that he was terminated in retaliation for the exercise of his First Amendment right of free speech. First, Mr. Stephens must demonstrate as a matter of law that his speech was of public concern. The Supreme Court has held that public employees do not have First Amendment protection for statements made pursuant to their official duties. *Garcetti v. Ceballos*, 547 U.S. 410, 426, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006). Therefore, a public employee who is alleging violation of his First Amendment rights must demonstrate that he speaks as a private citizen on a matter of public concern. *Anthoine*, 605 F.3d at 748.

The Ninth Circuit has "not articulated a precise definition of 'public concern.'" *Desrochers v. City of San Bernardino*, 572 F.3d 703, 709 (9th Cir. 2009). In determining whether speech is of public concern a court must avoid "rigid multi-part tests that would shoehorn communication into ill-fitting categories," *Weeks v. Bayer,* 246 F.3d 1231, 1234 (9th Cir. 2001). Instead, the court should rely "on a generalized analysis of the nature of the speech." *Desrochers*, 572 F.3d at 709.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 6

Case 2:15-cv-00115-RMP    Document 76    Filed 09/07/16

Courts determine whether statements address a matter of public concern by evaluating the "content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-148 (1983). The public concern inquiry is a question of law on which the plaintiff bears the burden of proof. *Desrochers*, 572 F.3d at 709.

"The scope of the public concern element is defined broadly in recognition that 'one of the fundamental purposes of the first amendment is to permit the public to decide for itself which issues and viewpoints merit its concern.'" *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 978 (9th Cir. 2002) (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)). "But there are limits. 'In a close case, when the subject matter of a statement is only marginally related to issues of public concern, the fact that it was made because of a grudge or other private interest or to co-workers rather than to the press may lead the court to conclude that the statement does not substantially involve a matter of public concern.'" *Desrochers*, 572 F.3d at 709-10 (quoting *Johnson v. Multnomah Cty.*, 48 F.3d 420, 425 (9th Cir. 1995)).

The 'content' element is "the greatest single factor in the *Connick* inquiry." *Id.* at 710. Speech is a matter of public concern when the content involves any matter related to political, social, or other community concern. *Anthoine*, 605 F.3d at 748. Further, speech is a matter of public concern if it supplies information that

1  enables members of society to make informed decisions about newsworthy

2  government operations. *Desrochers*, 572 F.3d at 710.

3  Speech is not a matter of public concern if it involves personnel disputes and

4  grievances that have no relevance to the public's evaluation of the government or

5  agency. *Connick*, 461 U.S. at 147. "The same is true of 'speech that relates to

6  internal power struggles within the workplace,' and speech which is of no interest

7  'beyond the employee's bureaucratic niche.'" *Desrochers*, 572 F.3d at 710

8  (quoting *Tucker v. Cal. Dep't of Educ.*, 97 F.3d 1204, 1210 (9th Cir. 1996)). If

9  some part of the speech addresses an issue of public concern, First Amendment

10  protection applies, even though other aspects of the communication do not qualify

11  as a public concern. *Hyland v. Wonder*, 972 F.2d 1129, 1137 (9th Cir. 1992).

12  Defendants argue that Mr. Stephens has been "extremely vague" about what

13  specific protected speech that he contends was a substantial or motivating factor in

14  his two terminations. ECF. No. 30 at 13. It is Mr. Stephens' burden to

15  demonstrate as a matter of law that his speech addressed an issue of public concern

16  based on "the content, form, and context of a given statement, as revealed by the

17  whole record." *Connick*, 461 U.S. at 147.

18  Plaintiff has not clearly identified in his briefing his alleged protected

19  speech. However, in his deposition, ECF No. 40-1, Ex. 1, and supporting

20  declaration, ECF No. 40-1, Ex. 2, Mr. Stephens testified that (1) in 2008 or 2009,

21  that he had sent a four-page document to the District addressing the District's

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 8

1  staffing of its resident program; (2) in 2012, Mr. Stephens spoke to the District
2  about the number of career personnel assigned to staffing the engines;  (3) at an
3  undisclosed date, Mr. Stephens spoke to the District about its shared command
4  program; (4) at an undisclosed date, Mr. Stephens spoke to the District about the
5  District's intended purchase of a water tender; (5) at an undisclosed date, Mr.
6  Stephens spoke to the District about trying to reduce the number of District
7  personnel that were dispatched to incidents; and (6) at an undisclosed date, Mr.
8  Stephens spoke to the District about his concerns related to the requirements of a
9  sleeper to backfill.  ECF No. 40-1, Ex. 1 at 81-82, 85.  Mr. Stephens elaborates on
10 these general categories in his declaration, attached as Exhibit 2 to ECF No. 40-1.

   The first five incidents of speech generally concern the operation of district programs and expenditure of public funds, which arguably are issues involving content that would be of concern to community members.  *See Gilbrook v. City of Westminster*, 177 F.3d 839, 866 (9th Cir. 1999) (holding that statements which called into question a "fire department's ability to respond effectively to life-threatening emergencies" addressed a matter of public concern); *Allen v. Scribner*, 812 F.2d 426, 431 (9th Cir. 1987) (noting that speech "relating to the competency of . . . management as well as the efficient performance of [government] duties" addressed a matter of public concern).  However, the Court also must consider the context and form of the speech.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 9

Mr. Stephens offers no evidence that his speech regarding the District's staffing of its resident program, the number of career personnel assigned to staffing the engines, the District's shared command program, the District's intended purchase of a water tender, reducing the number of District personnel that were dispatched to incidents, or the requirements of a sleeper to backfill were made in any public gathering or to any audience other than the District.

Courts have held that public employees' speech about their employment conditions and policies involve a matter of public concern when the speech is made publicly. *See, e.g.*, *McKinley*, 705 F.2d at 1112 (plaintiff's speech purposefully directed to the public through city council meetings and television interview); *Lambert v. Richard*, 59 F.3d 134, 137 (9th Cir. 1995) (plaintiff spoke at televised city council meeting); *Gilbrook*, 177 F.3d at 850 (plaintiff issued a press release). Nowhere in his deposition or his declaration does Mr. Stephens attest that he made any statements to the public. Rather, Mr. Stephens states that he wrote a letter to Chief Baker in 2008 or 2009 regarding issues about the resident program and staffing. ECF No. 40-1, Ex. 1 at 82. Mr. Stephens communicated with Chief Fenton, Chief Baker, Chief Roy, and Chief Miller regarding his recommendations about staffing and sleeper qualifications. ECF No. 40-1 at 85-86. It was unclear from the record to whom Mr. Stephens communicated concerns regarding the purchase of the water tender. ECF No. 40-1, Ex. 1 at 85 (Mr. Stephens states in his

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 10

deposition that the water tender was not purchased because someone else had written a letter to the fire commissioners.).

The Court concludes that there is no evidence that Mr. Stephens made his proffered examples of speech to the public.

### ii. *Private Citizen*

In order to state a Freedom of Speech retaliation claim, Mr. Stephens also must establish that he spoke as a private citizen, not as a public employee. *Anthoine*, 605 F.3d at 749. " 'Statements are made in the speaker's capacity as [a] citizen if the speaker had no official duty to make the questioned statements, or if the speech was not the product of performing the tasks the employee was paid to perform.' " *Id.* (quoting *Eng*, 552 F.3d at 1071). Speech owing its existence to an employee's official job duties is not protected by the First Amendment. *Garcetti*, 547 U.S. at 410. A court's inquiry of whether a plaintiff's speech was as a private citizen is "a practical one." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1069 (9th Cir. 2013) (quoting *Garcetti*, 547 U.S. at 424).

Mr. Stephens presents no evidence that the proffered instances of speech were made as a private citizen rather than in his position as a captain of the fire district and the president of the union. There is no evidence that Mr. Stephens addressed the public directly as a private citizen or otherwise made his speech publicly available as a private citizen. The content of the speech, such as staffing issues or qualifications of a sleeper to backfill, was work related, and although

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 11

tangentially of general public concern, the examples of speech that Mr. Stephens has proffered would not enable members of society to make informed decisions about newsworthy government operations. *See Desrochers*, 572 F.3d at 710.

The Court finds that none of Mr. Stephens' proffered instances of speech qualifies as being of public concern either in form of delivery or in content, nor that Mr. Stephens was speaking as a private citizen in a public forum. Therefore, the Court finds that Mr. Stephens has failed to establish that his First Amendment right to free speech was infringed by Defendants.

### B. Section 1983 Freedom of Association Retaliation Claim

Mr. Stephens argues that his 2013 and 2015[1] terminations were impermissible adverse employment actions in retaliation for his exercise of his protected right to associate with his union. ECF No. 23 at 6.

The Supreme Court has held that protected First Amendment associational activity includes "expressive association." *Roberts v. U.S. Jaycees,* 468 U.S. 609, 617-18 (1984). Expressive association includes activity involving "a wide variety of political, social, economic, educational, religious, and cultural ends." *Id.* at 622.

---

[1] The Court notes that Mr. Stephens re-alleges "paragraphs 1.1 through 3.13" in his Second Cause of Action, Violation of Civil Rights (42 U.S.C. § 1983). ECF No. 23 at 6. However, Mr. Stephens does not refer to his 2015 termination until paragraph 3.15 of his amended complaint. ECF No. 23 at 4. Despite this discrepancy, the Court has analyzed Mr. Stephens' § 1983 claim as being applicable to both the 2013 and the 2015 terminations.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 12

The right to expressive association is the "right to associate for the purpose of engaging in those activities protected by the First Amendment--speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id.* at 618.

"[A] plaintiff alleging an adverse employment action in violation of his First Amendment rights must show that his protected conduct was a 'substantial' or 'motivating' factor for the employer's action." *Strahan v. Kirkland*, 287 F.3d 821, 825 (9th Cir. 2002) (quoting *Gilbrook v. City of Westminster*, 177 F.3d 839, 853-54 (9th Cir. 1999) (as amended)). The burden then shifts to the employer who must

> "demonstrate either that, under the balancing test established by *Pickering* [,] the employer's legitimate administrative interests outweigh the employee's First Amendment rights or that, under the mixed motive analysis established by *Mt. Healthy* [,] the employer would have reached the same decision even in the absence of the employee's protected conduct."

*Hudson v. Craven*, 403 F.3d 691, 695 (9th Cir. 2005) (quoting *Thomas v. City of Beaverton*, 379 F.3d 802, 808 (9th Cir. 2004) (internal alterations, quotations, and citations omitted).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 13

Defendants argue that there is no evidence[2] from which a reasonable jury could conclude that Mr. Stephens' union activities were a substantial or motivating factor in either of his terminations. ECF No. 30 at 7-8. Mr. Stephens argues "[t]here is [a] direct causal connection between the arrival of David Baker at Fire District No. 2 and his targeting of Stephens for discipline while Stephens served as union president and primary union negotiator." ECF No. 42 at 4.

Mr. Stephens' claims alleging retaliation for his protected union activities are focused on the temporal proximity between the union's negotiations with the District regarding a successor agreement and Mr. Stephens' terminations in 2013 and 2015, as well as alleged expressions of opposition to the union by District employees or members on the Board of Fire Commissioners. The Court addresses whether this evidence establishes that Mr. Stephens has raised a genuine issue of material fact as to whether his exercise of speech or union activities were substantially motivating factors in the adverse employment actions that he experienced.

### i.     *2013 Termination*

Mr. Stephens alleges that a substantial or motivating factor in the District's decision to terminate his employment in July 2013 was his union association.

---

[2] The Court granted Defendants' Motion to Strike certain portions of Plaintiff's evidence and does not consider those stricken portions in analyzing Defendants' Motion for Summary Judgment, ECF No. 30.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 14

Mr. Stephens testified that he has been union president since at least 2006. ECF No. 40-1, Ex. 2 at 1. Mr. Stephens testified that he had been involved in all contract negotiations on behalf of the union from 2002 until the time of the deposition when the third contract was being negotiated. ECF No. 40-1, Ex. 1 at 66. In his declaration, Mr. Stephens states that union negotiations with the District, relating to the union's successor agreement, reached an impasse by January 2010. ECF No. 40-1, Ex. 2 at 2

Mr. Stephens relies primarily on his own declaration and deposition testimony to support that in 2010 or 2011, Chief Baker did not object to others "badmouthing" the union on a few occasions, *see e.g.* ECF No; 40-1, Ex. 2 at 13; that in the 2009 negotiations that Chief Baker's demeanor toward Mr. Stephens, as well toward other union executives, changed from friendly bantering to more formal communications during negotiations, ECF No. 40-1, Ex. 2 at 12; that one commissioner, Ken Christensen, had made derogatory remarks in 2010 regarding the union and Mr. Stephens. ECF No. 40-1, Ex. 1 at 41, 43-44. However, Mr. Stephens does not dispute that Chief Baker, not Commissioner Christensen, had sole power to terminate employees. Mr. Stephens also does not dispute that he remained the union president even after his 2015 termination.

Based on the record before the Court, a reasonable jury could not infer that Mr. Stephens' association with the union since 2002 was a substantial or motivating factor for Mr. Stephens' termination either in 2013 or 2015. There is

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 15

no temporal connection between Mr. Stephens' longtime union activities and Chief Baker's actions terminating his employment.

Even assuming, *arguendo*, that Mr. Stephens' union activities were a substantial or motivating factor in his terminations, the Court finds that the District had legitimate, nonretaliatory reasons, for Mr. Stephens' termination in 2015 based on Mr. Stephens' multiple acts of misconduct. *See e.g.,* ECF No. 31-1, Baker Dec. at 3 (violating personnel policies and directives from 2010 to 2013); ECF No. 31-1, Baker Dec. at 3 (being reprimanded in writing in 2010 and 2011); ECF No. 31-1, Baker Dec. at 4 (being given written notice of a formal investigation of his behavior); ECF No. 31-1, Baker Dec. at 4 (being placed on administrative leave). Defendants raise other concerns, such as Mr. Stephens' lack of preparation for a training session and failing to report to a fire after advising a dispatcher that he would report to the fire, that generate additional bases for Mr. Stephens' termination for cause.

The Court finds that Mr. Stephens has failed to raise genuine issues of material fact that either his First Amendment rights of free speech and free association was a substantial or motivating factor in the District's decision to terminate his employment either in 2013 or 2015 or that Defendants would not have terminated Mr. Stephens either in 2013 or 2015 absent Mr. Stephens' speech or union activities. Therefore, Mr. Stephens' § 1983 claims that his constitutional rights were violated by Defendants are **dismissed with prejudice.**

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 16

Having dismissed Mr. Stephens' § 1983 claims, the Court will not address Defendants' arguments under *Monell* or qualified immunity. The Court also declines to exercise supplemental jurisdiction over Mr. Stephens' state law claims, which are dismissed without prejudice.

Accordingly, **IT IS HEREBY ORDERED:**

Defendants' **Motion for Summary Judgment** re Claims of Plaintiff Stephens, **ECF No. 30**, is **GRANTED in part and DENIED in part** as follows:

1. Plaintiff Stephens' 28 U.S.C. § 1983 claims against Defendants Douglas County Fire District No. 2 and David Baker are **DISMISSED WITH PREJUDICE**;

2. Plaintiff Stephens' claims for punitive damages against Defendant Douglas County Fire District No. 2 is **DISMISSED WITH PREJUDICE**;

3. Plaintiff Stephens' remaining state law claims are **DISMISSED WITHOUT PREJUDICE**;

4. All pending motions and the trial date are **STRICKEN.**

The District Court Clerk is directed to enter this Order, enter Judgment accordingly, provide copies to counsel and **close this case**.

**DATED** this 7th day of September 2016.

                *s/ Rosanna Malouf Peterson*
                ROSANNA MALOUF PETERSON
                United States District Judge